UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADFORD DEAN BOUYE, JR., )<br>   )<br>         Plaintiff, )<br>   )<br>   v.   )<br>   )<br>T. HOWARD, *et al.*, )<br>   )<br>         Defendants. ) | No. 1:21-cv-02968-JMS-MPB |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING DEFENDANT TO SHOW CAUSE WHY
EXHAUSTION DEFENSE HAS NOT BEEN WAIVED**

This action is proceeding with Eighth Amendment force and medical claims arising from a cell extraction at Pendleton Correctional Facility. One defendant, Nurse Justin Gust, seeks summary judgment based on the affirmative defense that the plaintiff, Bradford Bouye, failed to exhaust administrative remedies before filing suit. For the following reasons, the motion for summary judgment is denied, and the Court deems the exhaustion defense waived.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Mr. Bouye failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Nurse Gust faces the burden of establishing that "an administrative remedy was available and that [Mr. Bouye] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

## III.
## Procedural and Factual Background

The Indiana Department of Correction (IDOC) Offender Grievance Process is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 42-3 at § II. Inmates can use the Grievance Process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A). The Grievance Process was an appropriate venue for Mr. Bouye to raise concerns about the cell extraction, injuries he suffered in it, and treatment for those injuries.

To exhaust the Grievance Process's remedies, an inmate must complete four steps.

First, the inmate must attempt to resolve his concern informally. *Id.* at § IV(1) (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist. *Id.* at § X. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at § XI. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the grievance specialist, who will transmit it to the IDOC's grievance manager. *Id.* at § XII.

Grievances, appeals, and responses are recorded in the IDOC Records Management System (IRIS). *See id.* at §§ III(I), X(B) (after receiving a grievance, the grievance specialist "shall either accept it and record it, or reject it"), XI ("The Offender Grievance Specialist shall record the date they received the appeal, forwarded [*sic*] the appeal to the office of the Warden, and generate a receipt for the appeal and forward a copy to the offender.").

In support of his motion, Nurse Gust has filed a log of Mr. Bouye's grievances through May 16, 2022. Dkt. 42-2. The log shows that the grievance specialist received a formal grievance from Mr. Bouye on July 12, 2021, and assigned it number 130853. Dkt. 42-2 at 2. The grievance was received approximately two weeks after the cell extraction that is the subject of this lawsuit. The log identifies the topic of the grievance as "Special Housing Units—Excessive use of Force—Forced Cell Moves." *Id.* The log provides no other information about grievance 130853, and Nurse Gust has not filed a copy of the grievance itself or the grievance specialist's response.

## IV.
## Analysis

Under the PLRA, "no action shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Even so, "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "No matter how it is raised, . . . the failure to exhaust is an affirmative defense that the defendant must prove." *Manley v. Sevier*, 746 F. App'x 594, 596 (7th Cir. 2019).

The core of Nurse Gust's argument for summary judgment is as follows:

> Defendant has obtained and reviewed Plaintiff's grievance records, which clearly indicate Plaintiff did not complete the exhaustion requirement as to the claims included in his Complaint. [UMF 8]. Specifically, Plaintiff failed to file any formal grievances relating to his allegations that RN Gust failed to provide treatment following a cell extraction. [UMF 8]. Plaintiff failed to complete the first step of the grievance process, let alone exhaust his administrative remedies.

Dkt. 41 at 6–7. This argument, though, is not borne out by the evidence.

The record Nurse Gust has developed shows that Mr. Bouye submitted a formal grievance regarding a cell extraction around the time of the cell extraction underlying this lawsuit. Nurse Gust did not attach the grievance itself, and he did not explain why. As a result, all the information in the record about grievance 130853 comes from the IRIS log. Dkt. 42-2 at 2. And

5

that limited information falls short of demonstrating that Mr. Bouye failed to raise concerns about his post-extraction medical care.

To be sure, the IRIS summary does not name Nurse Gust as a staff member implicated by the grievance. *Id.* But no provision in the Grievance Process required Mr. Bouye to name a responsible individual, so failure to name Nurse Gust does not equate to failure to exhaust. *See* dkt. 42-3 at § X(A) (minimum standards for formal grievances); *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."); *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005) ("We and the majority of the circuits have never endorsed … the defendants' invitation to engraft onto § 1997e(a) a requirement that defendants to a civil suit be first named in an inmate's prison grievance.").

The IRIS log also does not refer explicitly to injuries or medical care. But Nurse Gust cannot rely on a ten-word IRIS summary to prove the contents of a document he could have—and should have—filed and allowed to speak for itself. Fed. R. 1002 ("An original writing . . . is required in order to prove its content . . . .").

Nurse Gust has also attached an affidavit from a grievance specialist stating that her "[r]eview of Mr. Bouye's grievance records reveals that he did not file any grievances against Nurse Justin Gust, nor any member of medical staff, related to treatment following a cell extraction on June 28, 2021." Dkt. 42-1 at ¶ 10. But this affidavit indicates only that the grievance specialist reviewed the IRIS log. *Id.* at ¶ 9. It is not evidence of what issues Mr. Bouye raised or failed to raise in grievance 130853.

6

Although Nurse Gust does not raise this point explicitly, the Court has considered that the IRIS log documents no appeals to grievance 130853. Assuming Mr. Bouye properly asserted concerns about medical care in his formal grievance, the IRIS log nevertheless allows the possibility that he failed to exhaust those concerns by failing to pursue appeals. But Nurse Gust's failure to develop a more thorough record dooms this argument too. The IRIS log is silent as to whether the grievance specialist responded to grievance 130853. Dkt. 42-2 at 4. Without a response, Mr. Bouye could not have appealed. Dkt. 42-3 at § XI ("If the offender is dissatisfied *with the grievance response*, they may *appeal the response* . . . . The offender must state *why the previous response* was unacceptable . . . .") (emphasis added). In failing to demonstrate that the grievance specialist responded, Nurse Gust failed to demonstrate that the appellate stages of the Grievance Process were available to Mr. Bouye.

"Because exhaustion is an affirmative defense," Nurse Gust faces the burden of establishing that "an administrative remedy was available and that [Mr. Bouye] failed to pursue it." *Thomas*, 787 F.3d at 847. Nurse Gust failed to meet that burden. His motion for summary judgment, dkt. [40], is **denied**.

## V.
## Waiver of Exhaustion Defense

The Court also cannot grant summary judgment in Mr. Bouye's favor on the exhaustion issue. *See* Fed. R. Civ. P. 56(f)(1) (granting summary judgment for a nonmovant). The slim record before the Court does not show that Mr. Bouye used the Grievance Process to raise concerns about his injuries and medical care any more than it shows he failed to raise those concerns.

"[I]n the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Where material facts are in dispute, that requires an evidentiary hearing. *Id.* But no hearing is warranted

7

in this case. "The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion, including what steps were taken and whether the futility exception might apply." *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015). Nurse Gust's motion does not place facts in dispute; it asserts that facts are undisputed and fails to cite the evidence that would prove his point.

It is well-settled that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017). Nurse Gust could have proven failure to exhaust by filing a copy of grievance 130853 and any response from the grievance specialist. Instead, he advanced a perfunctory, unsupported argument. The Court need not convene a hearing to consider evidence that Nurse Gust could easily have attached to his summary judgment motion. By seeking summary judgment on an incomplete record, Nurse Gust left the exhaustion defense undeveloped, unsupported, and therefore waived.

## VI.
## Conclusion and Order to Show Cause

Nurse Gust's motion for summary judgment, dkt. [40], is **denied**. He will have **through December 16, 2022**, to show cause why the exhaustion defense should not be considered **waived**.

**IT IS SO ORDERED.**

Date: 12/9/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRADFORD DEAN BOUYE, JR.
914329
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Julie Tront
Office of Indiana Attorney General
julie.tront@atg.in.gov