UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADFORD DEAN BOUYE, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-02968-JMS-MG |
| J. WILLIAMS Sergeant, | ) ) ) |
| Defendant. | ) ) |

**Findings of Fact and Conclusions of Law**

Bradford Dean Bouye, Jr. alleges he was subjected to excessive force during a cell extraction at Pendleton Correctional Facility when Defendant Sergeant Jacob Williams used an oleoresin capsicum (OC) fogger to fill his cell with OC vapor (OCV). The Court conducted a bench trial on April 22, 2025, to resolve this claim. Mr. Bouye was present in person and by recruited counsel[1] and the defendant was present in person and by counsel. Based on its evaluation of the evidence and testimony presented at the trial and the parties' arguments, the Court now issues the following findings of fact and conclusions of law.

**I. Findings of Fact[2]**

On June 28, 2021, Mr. Bouye had been an inmate in the Indiana Department of Correction's (IDOC) custody for nearly thirty years, with most of that time spent at Pendleton Correctional Facility (Pendleton). At the time, he had a prison job as a utility worker where his responsibilities included cleaning and sanitizing the living quarters on his housing range, J Cellhouse. Mr. Bouye

---

[1] The Court is grateful for the significant time and efforts of recruited counsel Katherine Erdel and Winfield Ong of Dentons Binghham Greenebaum, LLP, in representing Mr. Bouye.

[2] Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

was generally regarded as compliant, respectful, and a good worker by prison staff at Pendleton. However, in the days leading up to June 28, the officers assigned to his housing range noticed that Mr. Bouye was not acting like himself. He was erratic, screaming and threatening, not doing his job responsibilities, and throwing property out of his cell. He was given a pass to mental health on June 28, meaning he was given permission to visit mental health personnel at a specified time that day. Mr. Bouye had recently lost both of his parents in a short time, which could potentially explain his sudden change in behavior and why his pass to see mental health on June 28 was so important to him.

Sergeant Harris, who was assigned to Mr. Bouye's housing unit that day, informed him of his mental health pass for that afternoon. She later learned that Mr. Bouye would also be moving from his current cell in J Cellhouse to a new cell in H Cellhouse that day. He was being moved because he was being terminated from his job as a utility worker due to his refusal to perform his job duties over the past several days. Mr. Bouye's current cell was reserved for the utility worker in J Cellhouse, so losing his job also meant losing his cell location. When Sergeant Harris learned of his move, she informed Mr. Bouye. He told her that he refused to leave. He believed that H Cellhouse was only for inmates with pending disciplinary violations and, as he did not have any, he did not believe he should be moved there. He also believed that moving to H Cellhouse would cause him to miss his mental health pass, which he believed violated an IDOC policy. Sergeant Harris reported Mr. Bouye's refusal to voluntarily move cells to her superior, Captain Hill, who ordered that a cell extraction team be assembled to move Mr. Bouye.

Sergeant Williams was assigned as the extraction Team Supervisor. He had been trained on the use of physical force, the use of chemical agents, and how to lead Quick Response Teams (QRTs), which include cell extraction teams. The IDOC Use of Physical Force policy states that

"[p]hysical force may be used… [w]hen an offender continues to passively resist/refuses to comply (move) after all appropriate verbal interventions have been exhausted." Ex. 12 at 1. It further explains that "[t]he use of physical force is only to be used to regain or maintain control, only in cases of last resort" and "[i]n all cases, the use of physical force shall be limited to the least amount of force necessary to ensure compliance." *Id.* at 2. The QRT portion of IDOC's Emergency Plans policy authorizes the use of a cell extraction team when, among other instances, "an offender refuses to obey instructions from staff to voluntarily be restrained and brought out of their cell for a specific security concern." Ex. 13 at 17. It dictates that, upon arrival of the team at the site of the extraction, the "Team Supervisor shall then order the offender ONCE to submit to being restrained. The Team Supervisor is **not to plead or reason with the offender** nor allow him excessive time to consider the instruction." *Id.* at 18 (emphasis in original). If the inmate does not comply with this order,

> then the Supervisor is to initiate the dynamic entry of the team into the cell or apply a 2-3 second application of the Mk 90 OCV[3] as mentioned above. The Supervisor will then allow ten (10) minutes to pass. At the conclusion of the ten minutes, the Supervisor is to then give the offender another order to be restrained…. If the offender refuses, a second 2-3 second application of the Mk 90 OCV fogger or apply the SA200 Pepper ball System (if authorized)… Then the Supervisor is to allow ten (10) minutes to pass.

*Id.* at 18-19. The Team Supervisor is supposed to repeat this a third time, and if the inmate still does not comply, then the Shift Supervisor should be contacted for further authorization of use of force. *Id.* at 19.

The purpose of using an OC fogger on an inmate during a cell extraction is to change his thought process. The chemical agent does so by causing extreme discomfort; its effect can include a burning sensation, running nose, coughing, sneezing, excess saliva and mucus.

---

[3] "Mk 90 OCV fogger" refers to the same chemical agent device the Court refers to as "OC fogger" and is the same device used by Sergeant Williams during Mr. Bouye's cell extraction on June 29, 2021.

When the cell extraction team arrived at Mr. Bouye's cell on June 28, 2021, Mr. Williams led the team and immediately approached Mr. Bouye's cell. Sergeant Williams told him to "come here" twice and to submit to restraints twice. Mr. Bouye responded with "no" three times and "I refuse" on their fourth interaction. While Mr. Bouye was midway through stating, "you didn't follow policy and procedure," Sergeant Williams deployed his OC fogger for arguably four seconds, although he counted to three out loud while doing so. The total time that elapsed between when Sergeant Williams first arrived at Mr. Bouye's cell door and ordered him to "come here" and when he began deploying the OC fogger was eight seconds. Ex. 9 at 2:08-2:18. For Mr. Bouye, the OC fogger caused a burning sensation on his skin and in his lungs every time he took a breath, which caused him to panic. He was taken to a decontamination shower in the cellhouse that had hot water, and was able to use cold water in his new cell to wash his face. The burning sensation lasted for a day or two.

## II. Conclusions of Law

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White,* 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar de minimis force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy,* 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not de minimis, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force— even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good- faith and malicious force, courts consider a number of factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the

> extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

The Court now proceeds to consider these factors.

### A. Need for Application of Force

This factor weighs in Sergeant Williams' favor. "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). Mr. Bouye was told by Sergeant Harris that he needed to move cells, but he refused. Once a cell extraction team was assembled, Sergeant Williams ordered him to submit to restraints and he again refused. With both sergeants, Mr. Bouye's responses were clear, direct, and defiant.

### B. Relationship Between the Need and Amount of Force

This factor also weighs in Sergeant Williams' favor. It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Id.* at 1270. Further, "[p]risoner administrators… should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 574 (1979)).

The IDOC QRT policy directed Sergeant Williams to "apply a 2-3 second application" of the OC fogger if, when initiating a cell extraction, the inmate refused to comply with an order to submit to restraints, as Mr. Bouye did. Ex. 13 at 18. While Sergeant Williams's actual application of OCV into Mr. Bouye's cell was arguably longer than the IDOC policy directs, he verbally counted to three while applying the chemical agent, evincing an intention to utilize the OC fogger as he was trained to do in such an instance.

### C. Extent of Injury

Again, this factor weighs in favor of Sergeant Williams. Mr. Bouye was exposed to three or four seconds of OCV, causing him to feel a burning sensation in his lungs when he tried to breathe. As the OCV saturated his cell with the chemical agent, his injuries would have been the same whether he was exposed to two or three seconds of OCV or three to four seconds. Mr. Bouye suffered no permanent injury as a result of being sprayed by the OC fogger.

### D. Extent of Threat to Safety

This factor weighs slightly in favor of Sergeant Williams. This factor contemplates "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *McCottrell*, 933 F.3d at 663. Mr. Bouye and Sergeant Williams had never previously interacted with one another prior to Mr. Bouye's cell extraction. Sergeant Williams' only knowledge was that Mr. Bouye was required to move cell locations and that he was refusing to do so. When he sprayed Mr. Bouye with the OC fogger, Mr. Bouye had only stood still in his cell and refused to comply, at one point turning to face Sergeant Williams and pulling down his face mask to speak more clearly. While Mr. Bouye was not acting erratically at the time Sergeant Williams spoke with him, he was defiantly refusing a direct order and "[o]rders given must be obeyed. Inmates cannot be permitted to decide which orders they will

6

obey, and when they will obey them. Someone must exercise authority and control." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984).

### E. Efforts Made to Temper Severity of Force

This factor weighs slightly in Mr. Bouye's favor. While the IDOC QRT policy states that Team Supervisors are "not to plead or reason with the offender" when ordering him to submit to restraints, the Use of Physical Force policy states that force should be used "only in cases of last resort." Ex. 13 at 18; ex. 12 at 2. These policies are intended to be followed in conjunction with one another. Therefore, there must be a manner of engaging with an offender at the beginning of a cell extraction that does not include pleading with an inmate but also ensures that, when an OC fogger is used, it is in fact a last resort. Sergeant Williams did not follow the IDOC policies in such a manner. He used his OC fogger on Mr. Bouye almost instantaneously, engaging in conversation with Mr. Bouye for less than ten seconds before using a chemical agent on him. His action was gratuitous and inconsistent with the policy's "last resort" language. But, as discussed above, while the use of the fogger in reality exceeded three seconds, Sergeant Williams counted to three and thus believed that he was using as little of the fogger as needed to gain compliance.

Taking all of these considerations together, there was a need for Sergeant Williams to use force, a reasonable relationship between that need and the amount of force used, and minimal injury suffered by Mr. Bouye. Sergeant Williams deviated from aspects of the IDOC policy dictating the use of force, perhaps unjustifiably in hindsight considering Mr. Bouye posed a minimal threat at the time. However, those deviations were not taken maliciously or wantonly to inflict harm on Mr. Bouye. Accordingly, the Court finds Sergeant Williams did not violate Mr. Bouye's Eighth Amendment rights.[4]

---

[4] At trial, Sergeant Williams argued that he was entitled to qualified immunity on the basis that there is no established case law discussing the usage of an OC *fogger* as opposed to an OC aerosol sprayer. Because the Court

## III. Conclusion

As discussed above, based on its evaluation of the evidence and testimony presented at the bench trial, the Court finds that Sergeant Jacob Williams did not use excessive force against Mr. Bradford Bouye on June 23, 2021, when he used an OC fogger to fill Mr. Bouye's cell with OCV during a cell extraction at Pendleton Correctional Facility. Accordingly, Sergeant Williams is not liable to Mr. Bouye. Judgment consistent with the Court's April 28, 2022, Screening Order, dkt. [15], the Order granting in part and denying in part motions for summary judgment, dkt. [126], and this Order shall now issue.

**IT IS SO ORDERED.**

Date: 4/28/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRADFORD DEAN BOUYE, JR.
914329
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

---

finds there is no Constitutional violation, it declines to reach the issue of whether Sergeant Williams is entitled to qualified immunity.